h SAUNDERS, Judge.
This is a negligence case. The trial court overruled Defendants’ exception of res judicata and awarded Clarence Skipper (Plaintiff) $4,000.00 in general damages, $1,595.00 for past medicals, and $1,954.00 in lost wages. We affirm.

*58
FACTS

On January 14, 1998, Plaintiff injured his back in an automobile accident. The accident occurred while Plaintiff, driving a 1978 Chevrolet pickup, was traveling on the 700th block of Bertrand in Lafayette, Louisiana. Clinton Hixson (Hixson), who was driving a 1996 Ford pickup with a goose-neck trailer attached, attempted to merge right and struck Plaintiffs automobile. Hixson carried Plaintiffs vehicle over fifty feet, over a curb, and into a private lot. Both the pickup and the horse trailer were owned by Scott and Jamie Berry (The Berrys) and insured by Allstate Insurance Company (Allstate),
As a result of the accident, Plaintiff filed suit on October 19, 1998, in Lafayette Parish District Court. According to Plaintiffs counsel, his office inadvertently addressed the envelope and filed the suit for damages in the Fifteenth Judicial Court. Plaintiffs counsel stated that the suit was captioned as a suit to be filed in Lafayette City Court, and the letter that accompanied the suit was addressed to the Lafayette City Court. Subsequently, on1 October 28, 1998, and prior to serving any of the defendants, Plaintiff filed an identical suit in Lafayette City Court. The suit filed in City Court was properly served, answered by all Defendants, progressed through discovery, and was set for trial on May 26, 1999. On . March 10, 1999, Plaintiff voluntarily filed a motion to dismiss with prejudice the action pending in Lafayette Parish District Court and the motion was signed on March 24, 1999.
On May 17, 1999, all Defendants in the City Court matter filed a peremptory exception of res judicata contending that the judgment dismissing the District Court | paction with prejudice barred Plaintiffs City Court action. Plaintiff argued that filing the District Court' suit was in error and that voluntarily dismissing the suit with prejudice was also done in error.
The trial judge ruled that the errors of Plaintiffs counsel constituted an “exceptional circumstance” under La.R.S. 13:4232 and commenced with trial..
Prior to trial, the Berrys were dismissed, thus Hixson and Allstate were the remaining Defendants. At the commencement of trial, Defendants stipulated that Hixson was solely at fault, and that Allstate provided coverage for Hixson up to the jurisdictional limits.

Plaintiff’s Medical History

Prior to the automobile accident, Plaintiff suffered from lower back pain and was treated by Dr. Michael Guarisco, a Lafayette chiropractor. After performing an X-ray, Dr. Guarisco found that Plaintiff had chronic L5-S1 disc degeneration. Dr. Guarisco recommended daily chiropractic manipulation and physical therapy. Treatments were conducted on the January 7, 8, and 12, 1998. According to Dr. Guarisco’s testimony, at the time of the third visit on January 12, 1998, Plaintiff was continually getting better, had made marked improvement, and his lower back pain had stabilized. Plaintiff returned to Dr. Guarisco’s office immediately following the automobile accident on January 14,1998.
Dr. Guarisco opined that due to Plaintiffs pre-existing lower back pain, any physical activities associated with daily living would aggravate his back. After the accident, Plaintiff reported increased symptoms. Dr. Guarisco testified that Plaintiff suffered a 100% relapse and was treated on twenty-one occasions following the accident. Further, Dr. Guarisco, in his notes, stated that since the accident was “a complication of a pre-existing condition, I continued with the same line of treatment.” Plaintiff was released from Dr. Guarisco’s care on May 19, 1998. However, Dr. | sGuarisco testified that since Plaintiff has a degenerative disc problem, any type of activity could cause a relapse. In fact, on both February 4, 1998, and February 26, 1998, certain daily activities resulted in increased pain.

*59
LAW AND ANALYSIS

A. Res Judicata and Exceptional CiRCUMSTANCES
Defendants’ first assignment of error is that the trial judge erred in finding that an exception to res judicata is applicable to this case. Defendants contend that an attorney’s mistake is not a sufficient justification to nullify the effects of a valid final judgment. In reviewing a peremptory exception, an appellate court must review the entire record to determine whether the factual conclusions of the trial court were manifestly erroneous. Tutorship of Larry Witt, 99-646 (La.App. 3 Cir. 11/3/99); 747 So.2d 1142.
La.R.S. 13:4231 sets forth the rule concerning res judicata and states that:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment. (Emphasis added.)
La.R.S. 13:4232(A)(1) grants an exception to La.R.S. 13:4231 and in pertinent part states that “[a] judgment does not bar another action by the plaintiff ... when exceptional circumstances justify relief from- the res judicata effect of the judgment.” |4The comments to La.R.S. 13:4232 state that this statute gives a court the authority to exercise its equitable discretion to balance the principle of res judicata with the interests of justice under exceptional circumstances.
The doctrine of res judicata is stricti juris; any uncertainty concerning the application of this principle must be resolved against its application. Fowler v. Hodge, 95-248 (La.App. 3 Cir. 5/31/95); 660 So.2d 506, writ denied, 95-2733 (La.11/26/96); 666 So.2d 674. “Plea of res judicata should not be sustained unless its application is clearly justified.” Brouillard v. Aetna Cas. and Surety Co., 94-1559, p. 2 (La.App. 3 Cir. 5/10/95); 657 So.2d 231, 233, (citations omitted). Several courts have prohibited the application of La.R.S. 13:4231 when the issues were never settled, litigated, or adjudicated. See Brouillard, 94-1559; 657 So.2d 231; Jenkins v. State, 615 So.2d 405 (La.App. 4 Cir.), writ denied, 617 So.2d 932 (La.1993); Billiot v. LeBeouf Brother Towing Co., 93-1697 (La.App. 1 Cir 6/24/94); 640 So.2d 826; Fine v. Regional Transit Auth., 95-2603 (La.App. 4 Cir. 6/26/96); 676 So.2d 1134.
In Jenkins, the plaintiffs attorney filed an action in state district court and subsequently removed the action to federal court. Following removal, the plaintiffs attorney filed an identical action in state court. The plaintiffs attorney then filed a motion to remand the federal suit to state court. This motion was denied and plaintiff continued with the action pending in state court. Consequently, the federal court dismissed plaintiffs action with prejudice for failure to prosecute. The defendants in the action seized the opportunity and filed an exception of res judicata. The state district court judge overruled the exception and the Fourth Circuit affirmed. In their reasons the court stated that:
*60 According to the official comment on the statute it is designed to allow the court to balance the principle of res judicata with the interests of justice. In the present case, plaintiff alleges that he has been the victim of a horrendous injustice. His interest in proceeding with the law suit outweighs any interest in the strict application of res judicata, | .¡especially considering that his predicament is the result of his attorney’s conduct and not his own.
Jenkins, 615 So.2d at 406-07.
In Billiot, 93-1697, p. 5; 640 So.2d at 829, the First Circuit, faced with a similar case, 'made the following comments:
We find nothing in the facts of the instant case to suggest that overruling the defendant’s exception of res judicata would create a hardship on the defendant so as to disturb the balance between finality and fairness. Indeed, to allow the exception to be sustained is to bar the plaintiffs forever from asserting their claims ... The defendant is not entitled to screen itself with a procedural windfall; the plaintiffs are entitled to their day in court. We conclude that the instant case is one of “exceptional circumstances.”
We find that the trial court - was correct in finding that this as an “exceptional circumstance” as contemplated by La.R.S. 13:4232. First, a mistake made by Plaintiffs attorney should not automatically bar Plaintiffs action forever. Secondly, Défendants were well aware of Plaintiffs intentions to litigate his action in City Court. In fact, Defendants did not answer the District Court petition and counsel’s misfiling the petition was the only step taken towards litigation in District Court because Plaintiffs attorney informed Defendants of his plans to file in City Court. Third, we find that Defendants are not prejudiced by the overruling of the exception of res judicata. In the trial transcript, Defendants admitted that they were not prejudiced.
Defendants’ attorney asserts that he is only doing his job and seeking the proper redress for his clients. We applaud his efforts. However, we, too, must do our jobs and we are not in the business of granting windfalls to litigants or of substituting opportunities for justice. Accordingly, we affirm the trial court’s denial of Defendants exception of res judicata.
B. Damages
lain their second assignment of error, Defendants contend that the trial court abused its discretion in ruling that Plaintiff was entitled to $4,000.00 in general damages, $1,595.00 in medical expenses, and $1954.00 in lost wages. In supporting this contention, Defendants claim that Plaintiff had pre-existing injuries for the exact same symptoms and-that after the accident the treating physician continued with previous treatment. Defendants further claim that this was a one-month injury and not a five-month injury. We will only address general damages and medical expenses in this section. The issue of lost wages will be discussed in the subsequent section.
As explained by the supreme court in Reck v. Stevens, 373 So.2d 498 (La.1979), appellate courts are to afford vast discretion to a trial court’s determination of general damages. Furthermore, appellate courts are to properly review the trial court’s exercise of discretion under the particular facts and circumstances of the case and should not reverse the award of general damages in the absence of a clear abuse of discretion. Id. See also Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 508 U.S. 910, 113 S.Ct. 2342, 124 L.Ed.2d 252 (1993).
With regard to a pre-existing condition, the supreme court, in Lasha v. Olin Corp., 625 So.2d 1002, 1005-06 (La.1993) (citations omitted), stated:
The defendant’s liability for damages is not mitigated by the fact that the plaintiffs pre-existing physical infirmity *61 was responsible in part for the consequences of the plaintiffs injury by the defendant. It is clear that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct.... When the defendant’s tortious conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation. (Emphasis added.)
In the instant case, the record establishes that Plaintiff had pre-existing lower back and leg pain and he received treatment on four occasions. According to his treating physician, Plaintiff had made substantial improvement prior to the accident, but the accident caused a 100% relapse. Before the accident, Dr. Guarisco estimated that Plaintiffs treatment would have been completed after two additional visits. |7Following the accident, Plaintiff was forced to undergo twenty-one additional visits. Considering these facts and the rules set forth in Reck and Lasha, we find that the trial court did not err in holding Defendants liable for the full extent of the aggravation. Thus, we affirm the award of general damages.
Concerning the past medical expenses, Defendants assert that Plaintiff was not entitled to the medical expenses for every visit he had after the automobile accident. Defendants’ contend that Plaintiff had returned to his pre-accident level less than a month after the accident and injured his back on two additional occasions.
Medical expenses, past and future, which are incurred by an injured plaintiff, are recoverable as an element of damages. Thames v. Zerangue, 411 So.2d 17 (La.1982). Again, we reiterate the La-sha rule in that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Lasha, 625 So.2d 1002.
The record contains evidence of Plaintiffs past medical expenses and shows that Plaintiff underwent twenty-one treatments after his accident, extending over a four-month period. Dr. Guarisco testified that the accident caused a 100% relapse into Plaintiffs pre-existing condition. He also testified that Plaintiff was predisposed to future injuries considering his pre-existing lower back and leg problems caused by the relapse. As such, on two occasions after the accident, Plaintiff reinjured his back while carrying out daily activities. Defendants failed to produce any evidence showing that these injuries were independently caused and not a result of the Plaintiffs weakened back. In light of the facts and the law, the trial court did not err in awarding Plaintiff medical expenses for the entirety of his treatments.
C. Lost Wages
| sDefendants assert that the trial court committed manifest error in awarding Plaintiff lost wages when Plaintiff failed to introduce medical testimony restricting his activities and also failed to corroborate evidence which was available.
This court set forth the standard in determining past lost wages and stated that: “Lost wages ‘need not be precisely proven, they must be shown with reasonable certainty.’ ” Taylor v. Premier Ins. Co., 98-1935, p. 7 (La.App. 3 Cir. 6/30/99); 742 So.2d 35, 40 (citations omitted). “An award for lost past wages can be ‘computed on the amount the plaintiff would have in all probability’ earned had he been able to work.” Id. at pp. 7-8; 40. (Citations omitted). This court has consistently held that a plaintiffs uncorroborated testimony is sufficient to prove lost wages as long as such proof is uncontra-dicted and reasonably establishes his claim. Green v. Superior Oil Co., 441 So.2d 54 (La.App. 3 Cir.1983); Richard v. Teague, 92-17(La.App. 3 Cir. 5/4/94); 636 So.2d 1160, writ denied, 94-1934 (La.11/11/94); 644 So.2d 388. “It is well settled that factual conclusions of the trial *62 judge particularly where the-credibility of a witness is involved, are entitled to great weight and will not be disturbed upon appeal.” Charles v. Arceneaux Ford, Inc., 542 So.2d 846, 850 (La.App. 3 Cir.1989) (citations omitted). .
Factors to be considered in determining a proper award for lost past income are the plaintiffs physical condition before the injury, the plaintiffs work history, work consistency, the amount the plaintiff probably would have earned absent the injury complained of. Smith v. Two “R” Drilling Co., Inc., 606 So.2d 804 (La.App. 4 Cir.), writ denied, 607 So.2d 560 (La.1992).
The trial court, in its reasons for judgment, stated that:
They were relatively minor injuries of fairly short duration. And, Mr. Skipper [Plaintiff] did maintain his regular employment during his time. He tried to mitigate his damages and did so as the law requires.... I think that is admirable that he did.... As to the amount of money that Mr. Guarisco [sic] missed because of his inability to do the bricklaying work, I — I notice that in nineteen, ninety-six (1996) he made gross | namount of Thirty-Eight Hundred and Thirty Dollars ($3830.00). Nineteen, ninety-seven (1997), that amount was Fifty-eight Hundred and Sixty-Two Dollars ($5862.00). Not quite twice as much money. Considerably more money. So, presumably, Mr. Guar — Skipper’s work was somewhat increasing. However, I don’t have any evidence of how much it would have increased. So, what I did was: divide the amount of his gross earnings in nineteen ninety-seven (1997) by three months to come up with the amount of Nineteen hundred and Fifty-four Dollars ($1954.00). That is the amount he would have earned in approximately four months.
Plaintiff testified as to the amount of time he missed from his job as a brick layer, his hourly pay, submitted tax returns, and a written document indicating the amount of time missed from work. All of this evidence reasonably established Plaintiffs claim. Plaintiff was also under the doctor’s care for a total of four months and he testified that he was unable to work during those months. The trial court accepted this testimony as credible. Additionally, Defendants failed to present any evidence to contradict this testimony, and we were unable to find any evidence in the record indicating that Plaintiff was forced to miss work as a brick layer prior to the automobile accident.
Defendants subtly suggest that, since Plaintiff was physically capable of continuing his job as a school bus driver, that he was equally capable of continuing his job as a bricklayer. Plaintiff testified that he was unable to find a substitute school bus driver, thus, his only option was to continue with the job due to his financial situation. • Again, the trial court accepted this testimony as credible. Moreover, it appears that the bending and handling of bricks would be more detrimental to Plaintiffs condition and, thus, his choice was logical.
Since we can discern no manifest error in the trial court’s findings or abuse of discretion with respect to its award for past lost wages, that portion of the trial court’s judgment is affirmed.

DECREE

| mConsidering the foregoing reasons, we affirm the trial court’s award of general damages, medicals, and lost wages and its denial of the res judicata exception.
AFFIRMED.
AMY, J., CONCURS.